UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:12-CR-57-F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| COREY CONNELL CARROLL, | ) | |
| Defendant. | ) | |

This matter was scheduled for hearing on the defendant's Motion to Suppress [DE-25], on August 21, 2012, at 10:00 a.m. This matter is scheduled for arraignment and trial during the November 5, 2012 term of court.

The Government was represented at the suppression hearing by Assistant United States Attorney Rudy Renfer. The defendant, Corey Connell Carroll, was present with his counsel, Josh Howard. Based on the evidence produced during the hearing, the court renders the following:

**FINDINGS OF FACT**

1. In March of 2008, officers from the New Bern Police Department ("NBPD") interviewed an informant who provided information regarding the drug-related activity of the defendant, Corey Connel Carroll ("Carroll"). This information was made known to Jacksonville Police Department ("JPD") detective Kevin J. Doyle ("Doyle"), who initiated an investigation of Carroll.

2. Detective Doyle was aware of substantial drug-related activity at and around 405 New River Dr., Jacksonville, NC 28540. The drug activity had been the subject of an ongoing investigation.

3. Carroll's principal residence is 405 New River Dr., Jacksonville, NC 28540. A shed is located on the property, behind the house. The residence is adjacent to 407 New River Dr., Jacksonville, NC, 28450.

4. Multiple JPD officers have personally observed Carroll at or around the house located at 405 New River Dr. and in the shed behind the house.

5. Detective Doyle's affidavit supporting the search warrant for 405 New River Dr. ("Doyle's affidavit") contained information indicating that in March of 2008, and again in April of 2010, an informant told detectives of the NBPD that he had delivered multiple kilograms of cocaine to Carroll at the shed behind 405 New River Dr. Doyle's affidavit does not specify when the informant allegedly delivered the cocaine to 405 New River Dr.

6. Doyle's affidavit indicated that on April 23, 2010, an informant told Detective Doyle that he had sold multiple ounces of cocaine to Carroll. Doyle's affidavit did not specify when the informant allegedly sold the cocaine to Carroll.

7. Doyle's affidavit indicated that on February 16, 2011, an informant provided a firearm allegedly obtained from 407 New River Dr. (the house next door to Carroll's residence) to the JPD, and that the informant told Detective Doyle that Carroll would hide items in and around the yards located at both 405 and 407 New River Dr. Although Doyle's affidavit indicates that the firearm was surrendered to the JPD on February 16, 2011, it does not reveal when the firearm was recovered or when the informant purportedly observed Carroll hide items in the yards of 405 and 407 New River Dr. Doyle's affidavit also indicates that this informant has provided information in the past regarding unrelated drug activity that has been corroborated by police.

8. Doyle's affidavit indicated that an informant told Doyle that twenty-two ounces of cocaine had been stolen from Carroll, and that Carroll stored cocaine in dog food bags in and around 405 New River Dr. Doyle's affidavit did not specify when the ounces of cocaine were allegedly stolen from Carroll or when the informant purportedly observed Carroll store cocaine in the dog food bags. Doyle's affidavit also indicates that this informant has provided information in the past regarding unrelated drug activity that has been corroborated by police.

9. According to Doyle's affidavit, on March 25, 2011, a defendant at a federal sentencing hearing provided a letter to his defense attorney and the letter was subsequently forwarded to Detective Doyle on an unspecified date. The letter purportedly indicated that Carroll keeps both drugs and weapons in the shed behind 405 New River Dr. This letter is described in Doyle's affidavit, but the letter itself is not part of the record. The affidavit does not indicate when the letter's author allegedly saw the drugs and weapons behind the shed at 405 New River Dr.

10. Doyle's affidavit indicates that during the week beginning January 16, 2012, Detective Doyle met with an informant, who told Detective Doyle that he/she had brought a friend to 405 New River Dr. and the informant's friend purchased a gram of cocaine from Carroll. The informant indicated that his/her friend walked behind the house at 405 New River Dr. to make the purchase. The affidavit does not indicate when this alleged drug transaction took place. Doyle's affidavit also indicates that this informant has provided information in the past regarding unrelated drug activity that has been corroborated by police.

11. The affidavit also indicates that on or about January 24, 2012, approximately 48 hours before the search warrant was issued, an unnamed taxi cab driver presented the following information to Doyle. Carroll had called an unnamed taxi company requesting a ride from 405

3

New River Dr. to a different address. When the taxi driver arrived, Carroll emerged from the shed behind the house located at 405 New River Dr. and held up one finger indicating he wanted the taxi driver to wait for him. The taxi driver then saw Carroll walk over to the side of the house located at 407 New River Dr. and remove a large item from the ground beside the house and place it under his shirt. When Carroll and an unnamed person entered the taxi, the driver smelled a strong odor of marijuana. The informant was subsequently able to identify the smell of marijuana at the JPD. The taxi driver then drove Carroll to the designated residence in Jacksonville, where Carroll requested the taxi driver remain in the car while he went inside. After remaining in the house a short time, Carroll returned to the taxi and the taxi driver no longer could detect the odor of marijuana. The affidavit does not specify the day or time the taxi driver purportedly observed Carroll remove the package from the side of the house at 407 New River Dr.

12. Officer Doyle applied for a search warrant for 405 New River Dr., Jacksonville, NC 28540 on January 26, 2012. Doyle's affidavit, the material parts of which are summarized in paragraphs 5-11 above, was provided to establish probable cause. At the suppression hearing, Doyle indicated that he met with a North Carolina Superior Court judge to apply for the warrant, and that the state judge read both the warrant application and Doyle's affidavit at the meeting. The state judge issued the warrant on the basis of the information contained in the affidavit; Doyle provided no additional information during the meeting.

13. On January 27, 2012, the JPD SWAT team executed the search warrant at 405 New River Dr. The JPD SWAT team entered 405 New River Dr. at approximately 1:12 AM, and

4

searched the residence itself, the yard, and the shed behind the home. Carroll was not found on the premises during the execution of the search.

14. The officers discovered cocaine and drug paraphernalia in the shed behind 405 New River Dr., and approximately $4,640.00 in Carroll's bedroom. A handgun was discovered in Carroll's father's bedroom. The officers also obtained mail addressed to Carroll at the 405 New River Dr. address.

## ANALYSIS

Carroll now argues that the warrant was not supported by sufficient probable cause. Carroll also submits that the good faith exception to the exclusionary rule, *United States v. Leon*, 468 U.S. 897 (1984), does not apply because the affidavit was so lacking in probable cause that a reasonable officer would not have relied on it. The court will first address the probable cause argument and then move to the good faith exception.

### A. Probable Cause

Carroll argues that the majority of the information provided in the warrant is "stale" and thus cannot support a finding of probable cause. Carroll also argues that the more recent information provided in the affidavit—from the taxi driver—lacks a sufficient nexus with 405 New River Dr. to provide probable cause to search that address. The court will only address the staleness issue because it is dispositive.

The Fourth Amendment requires probable cause before a search warrant may issue: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. In *Illinois v. Gates*, the Supreme Court defined probable cause as

a totality of the circumstances test that involves: "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. 213, 238 (1983). In addition to these general principles, the Fourth Circuit has recognized that the affidavit must provide evidence of recent criminal activity at the place to be searched, and has held that search warrants based on "stale" evidence are not supported by probable cause. *United States v. Doyle* 650 F.3d 460, 474 (4th Cir. 2011) ("it was unreasonable to believe that probable cause was demonstrated to search [the] home given the complete absence of any indication as to when the pictures were possessed"); *United States v. McCall*, 740 F.2d 1331, 1335-36 (4th Cir. 1984) ("A valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.' " (quoting *Sgro v. United States*, 287 U.S. 206, 210-11 (1932)).

For example, in *United States v. Doyle*, the affidavit tendered with the application for the search warrant provided no information regarding when the relevant criminal activity purportedly took place. *Doyle*, 640 F.2d at 474. There, officers executed a search warrant for child pornography at the residence. *Id.* at 463-64. The affidavit supporting the warrant application indicated that the defendant had shown nude pictures of young children to the informant's stepnephew. *Id.* at 472. However, the affidavit provided no information regarding when the defendant showed the pictures to the step-nephew. *Id.* at 474 . At the evidentiary hearing on the motion to suppress, the officers explained that they verbally told the magistrate the date the informants came forward and reported the pictures to police. *Id.* at 464-65. However, the

6

officers did not provide any information to the magistrate regarding when the defendant purportedly displayed the pictures to the step-nephew. *Id.* at 474. The *Doyle* court held that "it was unreasonable to believe that probable cause was demonstrated to search [the defendant's] home given the complete absence of any indication as to when the pictures were possessed."[1] *Id.*

As in *Doyle*, Detective Doyle's affidavit provides no information as to when the underlying criminal activity purportedly took place at Carroll's residence. The affidavit does provide the specific dates each informant spoke to police about the drug activity at Carroll's residence. However, the Fourth Circuit requires a close temporal connection between the alleged criminal activity itself (as distinguished from the dates the informants spoke to police) and the issuance of the search warrant. *Id.*; *McCall*, 740 F.2d at 1335-36; *see also United States v. Anderson*, 851 F.2d 727, 729-30 (4th Cir. 1988) (explaining that the relevant time period is measured from the date the criminal activity took place, not when the informant provided information to police). Under *Doyle*, an affidavit that does not provide any information regarding when the alleged criminal activity took place is not sufficient to show the existence of

---

[1] The precise legal issue in *Doyle* involved whether the *Leon* "good faith" exception could save a search conducted pursuant to a defective warrant. The *Doyle* court did not specifically address whether the affidavit provided sufficient probable cause because the district court moved directly to the *Leon* good faith exception without deciding the probable cause issue. *See United States v. Cluchette*, 24 F.3d 577, 581 n.4 (4th Cir. 1994) ("[R]eviewing courts have the discretion to consider the questions of the officers' good faith without deciding the Fourth Amendment issue."), *cited with approval in, Doyle*, 650 F.3d at 466 n.8. Because the *Doyle* court held that the warrant and affidavit in that case were so lacking in probable cause that a reasonable police officer could not have relied on it, *Doyle*, 650 F.3d at 474, the court concludes that an affidavit with the same flaws also cannot meet the probable cause standard. The *Leon* good faith exception will be addressed at pages 8-10.

7

a fair probability that contraband will be found at the place to be searched.[2] Thus, the warrant issued to search 405 New River Dr. was not supported by probable cause.

## B. The Good Faith Exception

Evidence seized pursuant to subsequently invalidated warrants can be saved in some cases through the *Leon* "good faith" exception to the exclusionary rule. In *Leon*, the United States Supreme Court held "the marginal or nonexistant benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922. The Fourth Circuit has also explained that "a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002).

However, the *Leon* good faith exception will not apply in four circumstances:

(1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979); (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) if under the circumstances of the case the warrant is "so facially deficient—*i.e.* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

*United States v. Dequasie*, 373 F.3d 509, 519-20 (4th Cir. 2004) (quoting *Leon*, 469 U.S. at 923). The court will address (3) "the affidavit supporting the warrant is 'so lacking in indicia of

---

[2] The court here is reluctant to second guess the work of law enforcement authorities, who must work under significant time pressure to obtain a warrant before the contraband is removed.

8

Case 7:12-cr-00057-F Document 37 Filed 08/31/12 Page 8 of 11

probable cause as to render official belief in its existence entirely unreasonable' " first because it precludes application of the *Leon* good faith exception here.

In *Doyle*, the Fourth Circuit focused primarily on the *Leon* good faith exception. *Doyle*, 650 F.3d at 466. The *Doyle* court held that "where the totality of the information provided to the magistrate included no indication as to when the events supposedly creating probable cause to search took place, we cannot conclude that the officers reasonably relied on the resulting search warrant." *Id.* at 475; *see also United States v. Zayas-Diaz*, 95 F.3d 105, 144-15 (1st Cir. 1996) ("[A] reasonably well-trained law enforcement officer should be familiar with the fundamental legal principle that both the 'commission' and 'nexus' elements of 'probable cause' include an essential temporal component."); *United States v. Huggins*, 733 F. Supp. 445, 449 (D.D.C. 1990) (rejecting argument that good faith exception applied because officers could not reasonably have relied on an affidavit that did not specify "the time during which the criminal activity occurred"), *cited with approval in, Doyle*, 650 F.3d at 475-76.

As already noted, Doyle's affidavit provides no information as to when the informants actually observed the criminal activity at 405 New River Dr. Pursuant to *Doyle*, the court concludes that the good faith exception to the exclusionary rule therefore does not apply. The Fourth Circuit has made clear that a reasonable police officer will not rely on warrants containing no information as to when the criminal activity actually occurred at the place to be searched. *Doyle*, 650 F.3d at 474-75. Thus, the officers' reliance on the warrant and affidavit was not reasonable and the *Leon* good faith exception cannot save the officer's search.

The court notes that in cases in which an affidavit provides evidence of an ongoing criminal enterprise, evidence that otherwise would be "stale" can provide a sufficient basis for a

9

finding of probable cause. *See, e.g., United States v. Minis*, 666 F.2d 134, 140 (5th Cir. 1982) (holding that four-month-old evidence was not stale because investigation involved ongoing marijuana cultivation operation); *United States v. McCall*, 740 F.2d 1331, 1336-37 (4th Cir. 1984) (describing multiple cases allowing longer time periods between observation of the alleged criminal activity and issuance of the warrant when police have evidence of an ongoing criminal enterprise). These cases are distinguishable: the affidavits included information regarding when the criminal activity was purportedly observed. The affidavit supporting the search of Carroll's home provided no dates on which any of the alleged criminal activity occurred. Thus, the court is unable to determine, even allowing for the wider time frame permissible when evidence of ongoing criminal activity is documented, whether the observations reported in the affidavit were sufficiently temporally proximate.

## Conclusions of Law

1. The warrant to search 405 New River Dr. was not supported by probable cause because the affidavit supporting the warrant provided no temporal connection between the criminal activity purportedly observed at the premises and the issuance of the warrant.

2. Because of the complete failure to provide the requisite temporal connection in the affidavit, "the affidavit supporting the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Dequasie*, 363 F.3d at 519 (quoting *Leon*, 469 U.S. at 923).

3. Because the search of 405 New River Dr. violated Carroll's Fourth Amendment rights, the appropriate remedy is exclusion of the fruits of that search. This includes all evidence seized

during the unlawful search of 405 New River Dr. and any evidence derived from the unlawful search (the fruits of the unlawful search).

## Summary

In summary, and for the foregoing reasons, Carroll's motion to Suppress [DE-25] is ALLOWED.

SO ORDERED.

This the 31 day of August, 2012.

JAMES C. FOX
Senior United States District Judge