UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:12-CR-57-F

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| COREY CONNELL CARROLL, | ) | |
| Defendant. | ) | |

This matter is before the court on the Government's Motion for Reconsideration of the Court's Granting of the Defendant's Motion to Suppress [DE-39]. The Government moves for reconsideration of this court's Order dated 31 August 2012 [DE-37], *United States v. Carroll*, No. 7:12-CR-57-F, 2012 WL 3780449 (E.D.N.C. Aug. 31, 2012) [hereinafter "Original Order"]. In the Original Order, the court suppressed evidence collected pursuant to a warrant that the court found was not supported by probable cause. The Government contends that this ruling was erroneous and moves for reconsideration.

The court will not reproduce the findings of fact in this Order, as they are adequately described in the Original Order. *See* Original Order [DE-37] at 1-5. The court will note the relevant facts as necessary in the analysis.

**DISCUSSION**

On August 31, 2012, this court allowed Carroll's motion to suppress on two grounds: (1) that the warrant was not supported by sufficient probable cause because it did not provide any dates on which the informants observed the criminal activity; and (2) that the good faith exception to the exclusionary rule did not apply because an objectively reasonable police officer

would not have relied on the warrant. Original Order [DE-37] at 10-11. In its motion for reconsideration, the Government launches a number of legal challenges to the Original Order.

**A. Standard of Review**

The Federal Rules of Criminal Procedure do not address whether a party may move for reconsideration of a decided motion. *United States v. Srivistan*, 476 F. Supp. 2d 509, 511 (D. Md. 2008), *rev'd on other grounds, Unitd States v. Srivistan*, 540 F.3d 277 (4th Cir. 2007); *United States v. Greenwood*, 974 F.2d 1449, 1468 (5th Cir. 1992). Federal courts that have addressed the issue have borrowed the standard from Rule 59 of the Federal Rules of Civil Procedure. *Srivistan*, 476 F. Supp. 2d at 511; *Greenwood*, 974 F.2d at 1468; *United States v. Fell*, 372 F. Supp. 2d 773, 779-80 (D. Vt. 2005). Thus, in deciding the Government's Motion, the court will adopt the standard from Rule 59(e) of the Federal Rules of Civil Procedure, which allows for motions to alter or amend a judgment. Fed. R. Civ. P. 59(e).

The standard of review for a Rule 59(e) motion is well established. The movant (here, the Government) must established one of three grounds: " '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not previously available; or (3) to correct a clear error of law or prevent manifest injustice.' " *Zinkland v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (quoting *Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006)); *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). The Government does not specifically address this standard in their brief. However, it appears the Government moves under Ground three—to correct a clear error of law or prevent manifest injustice. The Government has not argued that the controlling legal principles have changed since the court's Original Order, and the Government has not produced evidence that was not previously available. Thus, the court will

2

consider whether it committed a "clear error of law" in the Original Order, or if the Court needs to change the Original Order to prevent "manifest injustice." *Zinkland*, 478 F.3d at 637; *Pac. Ins.*, 148 F.3d at 403.

Under ground three, the Government has a particularly high burden. "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins.*, 148 F.3d at 403. In addition, " 'reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.' " *Id.* (quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1, at 124); *Hughes v. Bedsole*, 48 F.3d 1376, 1382 (4th Cir. 1995); *Williams v. Hous. Auth. of the City of Raleigh*, 595 F. Supp. 2d 627, 630 (E.D.N.C 2008).

## B. Application of this standard to the Government's arguments

Here, both parties presented briefs to the court on Carroll's motion to suppress and participated in an evidentiary hearing on the motion. The court has thus provided the parties with ample opportunity to present their arguments. In addition, Carroll's motion to suppress specifically cited to the primary case relied upon by the Court in its Original Order, *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011). In his motion, Carroll stated: "Paragraphs five through nine similarly fail to provide legally sufficient temporal specifics: while those passages provide information from recently-dated interviews, the text of the affidavit itself fails to offer the reviewing judicial official any information from which to establish the dates of the relevant events." Mot. to Suppress Evidence from Search of 405 New River Drive, Jacksonville, NC, and Incorporated Mem. of Law [DE-25] at 4. Then, on the same page of the motion, Carroll stated

"These failures do not satisfy the temporal proximity standard the Fourth Circuit established in . . . *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011)." *Id.* Similarly, the court in the Original Order relied on *Doyle* in holding that the warrant was not supported by probable cause. The Original Order explained "As in *Doyle*, Detective Doyle's affidavit provides no information as to when the underlying criminal activity purportedly took place at Carroll's residence. . . . [T]he Fourth Circuit requires a close temporal connection between the alleged criminal activity itself (as distinguished from the dates the informants spoke to police) and the issuance of the search warrant." Original Order [DE-37] at 7.

The Government in its brief on the original motion to suppress neither cited to *Doyle* nor addressed Carroll's argument that the dates provided in the affidavit relate only to the dates the informants spoke to police. Thus, the court will not consider at length a number of the government's arguments because the Government had the opportunity to present these arguments in its initial briefing. *See Pac. Ins.*, 148 F.3d at 403 ("[Rule 59e motion may not] be used to argue a case under a novel legal theory that the party had the ability to address in the first instance").

Specifically, the court will not consider: (1) the argument that the court interpreted the affidavit in a "hypertechnical manner" rather than in a "commonsense and realistic" fashion when it focused on the fact that the affidavit did not provide any dates on which the informants actually observed the criminal activity; and (2) the Governments arguments based on *United States v. Lewis*, 332 Fed. Appx. 951 (5th Cir. 2009) and *United States v. McKeever*, 5 F.3d 863 (5th Cir. 1993), which the Government contends involve facts that are more similar to Carroll than the facts in *Doyle*. *See* Government's Mot. for Reconsideration of the Ct.'s Granting of the Def.'s Mot. To Suppress [DE-39] at 11-18. As to the Government's first argument, in his motion

4

to suppress Carroll specifically argued that the court should consider the fact that the affidavit provided the dates the police interviewed informants and not the dates the informants observed the criminal activity. The Government has had its opportunity to argue that interpreting the affidavit in this manner constitutes a hypertechnical, rather than commonsense interpretation of the affidavit. As to the second argument, the Government has had its opportunity to distinguish *Doyle* and provide the court with alternative case law. The Rule 59(e) standard does not allow the Government to make those arguments on a motion for reconsideration. *See Pac. Ins.*, 148 F.3d at 403 ("[Rule 59e motion may not] be used to argue a case under a novel legal theory that the party had the ability to address in the first instance").

However, the Government arguably has not had the opportunity to make its arguments regarding: 1) how the court applied *Doyle* in the Original Order and 2) the applicability of the exclusionary rule.[1] Thus, the court will address those arguments. However, the court will only review its Original Order for a "clear error of law," *Zinkland*, 478 F.3d at 637, and the court remains mindful that reconsideration is "an extraordinary remedy that should be used sparingly." *Pac. Ins.*, 148 F.3d at 403. The court will separately address these arguments.

## C. The Government's argument that the court incorrectly applied *Doyle*

The Government makes two attacks on this court's application of *Doyle* in the Original Order: (1) that the *Doyle* court held the warrant lacked probable cause because, in addition to the lack of relevant dates, the crimes described by the informants did not relate to the crime for which the search warrant was sought, a circumstance that is not at issue in the Carroll affidavit;

---

[1] The Court notes that both parties did brief the good faith exception to the exclusionary rule. However, neither party addressed the more recent exclusionary rule balancing approach in their briefing or at the suppression hearing.

and (2) in *Doyle*, the affidavit failed to provide any date at all, whereas the Carroll affidavit provides numerous dates the informants spoke to police. The court does not share the Government's interpretation of *Doyle*.

The Government's first argument is contradicted by the plain language of *Doyle*. It is true that the *Doyle* court held the warrant lacked probable cause because the "bulk of" the crimes described in the warrant (child sexual abuse) did not provide probable cause to search for the distinct crime of possession of child pornography.[2] *Doyle*, 650 F.3d at 472-73. However, the *Doyle* court also held, as an alternative and distinct ground, that the warrant was not supported by probable cause because it provided no indication as to when the defendant possessed child pornography. The *Doyle* court put it this way: "[m]oreover, even assuming *arguendo* that a reasonable officer could believe that the pictures possessed by Doyle contained child pornography, it was unreasonable to believe that probable cause was demonstrated to search Doyle's home given the complete absence of any indication as to when the pictures were possessed." *Id.* at 474. The *Doyle* court held that either circumstance—the failure to provide dates *or* the failure to provide sufficient evidence that child pornography would be found during the search—provided a factual basis for its holding that the warrant lacked probable cause. *Id.* at 473-75.

In the court's Original Order, the court found that the warrant was not supported by probable cause because the affidavit provided no dates on which the informants observed the criminal activity. The *Doyle* court similarly held that the warrant was not supported by probable

---

[2] The warrant in *Doyle* also contained an allegation that the defendant possessed pictures of nude children, but the court held that this allegation, without any further description of the pictures, did not provide probable cause to search for child pornography. *Doyle*, 650 F.3d at 473.

6

cause because it did not provide any date indicating when the defendant possessed the child pornography. *Id.* at 473-76. This holding was a separate and alternative ground for the *Doyle* court's ultimate decision that the warrant was not supported by probable cause. *Doyle* does not require, as the Government argues, that the affidavit fail to provide the dates the informants observed the criminal activity and fail to provide any evidence of the crime for which the warrant was sought before the court finds that it is not supported by probable cause. Thus, the court has not made a "clear error of law" on this basis.

The Government also argues *Doyle* can be distinguished because "in *Doyle*, the affidavit contained not one reference to a date at all—not a date as to when the agent received the information nor a date as to when the criminal activity took place." Mot. for Reconsideration of the Ct's Granting of the Def's Mot. to Suppress [DE-39] at 9. The Government further contends that "[in *Doyle*] [w]ith [the] complete absence of any date provided for any information, either received by the agent or observed by the victim, there was absolutely no ambiguity and no reference point from which any magistrate could conclude the evidence was not stale." *Id.* at 9-10.

The court does not agree. In *Doyle*, the magistrate was provided the date the police interviewed the informants. *Doyle*, 650 F.3d at 474 ("Moreover, according to Rouse, he did not inform the magistrate of the timing of the alleged offenses, instead only relaying the dates of his interviews of the alleged victims."). Thus, *Doyle* is quite similar to the facts of Carroll: the reviewing judicial officer was provided the dates the police interviewed the informants, but not the dates the informants observed the criminal activity take place. As in *Doyle*, the court's Original Order held that the warrant was not supported by probable cause and that the *Leon* good

7

faith exception to the exclusionary rule could not apply where the warrant failed to provide any information as to when the informants actually observed the criminal activity recounted in the affidavit. *Id.* at 475 ("[W]here the totality of the information provided to the magistrate included no indication as to when the events supposedly creating probable cause to search took place, we cannot conclude that the officers reasonably relied on the resulting search warrant"). The fact that the reviewing judicial officer knew the date the informant spoke to police was irrelevant to the existence of PC in *Doyle*, and it was irrelevant in the court's Original Order. Thus, the court finds no clear error based on the Government's argument that *Doyle* is not applicable because the reviewing judicial officer in *Doyle* was not provided the dates the police interviewed the informants. The reviewing judicial official was provided that information in *Doyle*.[3]

## D. Government's argument that the exclusionary rule should not apply in this case

The Government also argues that the court erred in applying the exclusionary rule because the court failed to balance the deterrent effect of exclusion against the social costs of excluding evidence in a criminal trial, as required by United States Supreme Court precedent.[4] *See Herring v. United States*, 555 U.S. 135, 140 (2009); *Hudson v. Michigan*, 547 U.S. 586, 591

---

[3] The Government correctly points out that the affidavit in *Doyle* did not provide the dates the police interviewed the informants. However, the officer informed the magistrate of the interview dates when the officer applied for the warrant. *Doyle*, 650 F.3d at 474. Where officers provide additional information orally while applying for a warrant, the judicial official may take the information into account when making the probable cause determination. *United States v. Harris*, 255 F.3d 288, 293 (6th Cir.2001 ), *cert denied*, 534 U.S. 966 (2001) (concluding officer's oral statement during application for warrant may be considered as part of reviewing judicial officer's probable cause determination); *Doyle*, 650 F.3d at 475 (reviewing the "totality of the information provided to the magistrate").

[4] The Government also argues that the court's ruling on the good faith exception was erroneous. The Government has had multiple opportunities to argue the good faith exception, however, and the court will not consider that argument on a motion for reconsideration.

8

(2006). The Government contends that the Detective's omission of the dates the informants personally observed the criminal activity at Carroll's residence was merely negligent and any marginal deterrent benefit of exclusion in this case is outweighed by the substantial social costs of excluding inculpatory evidence in the criminal trial. The Government is correct that the court did not analyze this case under the *Herring* and *Hudson* balancing approach to the exclusionary rule and the court will therefore consider the Government's argument. However, the court does not agree that *Herring* and *Hudson* require a different result in this case.

Historically, the remedy for Fourth Amendment search violations has been the exclusion of evidence collected pursuant to the search. *See Mapp v. Ohio*, 367 U.S. 643 (1961); *Weeks v. United States*, 232 U.S. 383 (1914). However, a number of recent United States Supreme Court decisions have explained that district courts should not automatically exclude evidence collected pursuant to a defective search. These cases have held that exclusion should be a "last resort"—and only invoked where the deterrent effect on police conduct outweighs the substantial social costs associated with excluding evidence in a criminal trial. *See, e.g., Herring v. United States*, 555 U.S. 135, 140 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system"); *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence has always been our last resort . . . applicable only . . . 'where its deterrence benefits outweigh its substantial social costs' " (quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363 (1998)); *Scott*, 524 U.S. at 364-65 ("[O]ur cases have repeatedly emphasized that the rule's 'costly toll' upon truth seeking and law enforcement objectives presents a high obstacle for those urging application of the rule.").

9

In *Herring*, the Court examined whether the exclusionary rule should apply where an administrative error within the police department caused the Fourth Amendment violation. *Herring*, 555 U.S. at 138-39. The defendant ("Herring") had a lengthy criminal history and was well known to law enforcement. *Id.* at 137. When Herring showed up at the police department to retrieve personal property from his impounded truck, an officer asked the police warrant clerk to check for outstanding warrants. *Id.* The clerk did so, and a warrant from a neighboring county was found. *Id.* The officer arrested Herring, and during the search incident to the arrest, discovered contraband in Herring's vehicle. *Id.* Herring moved to suppress the contraband, arguing that it was the fruit of an unlawful arrest. *Id.* at 138. The Court, employing the exclusionary rule balancing approach, held that "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level." *Id.* at 144. The Court therefore affirmed the district court's ruling suppressing the evidence. *Id.* At 147-48.

Here, the Government, relying on *Herring*, argues that failing to draft the affidavit in such a way that the reviewing judicial officer could ascertain the dates the informants actually observed the criminal activity reflects only negligence on the part of the officer. Pursuant to *Herring*, the Government argues, the exclusionary rule should not apply because the police misconduct did not constitute "deliberate, reckless, or grossly negligent conduct." *Id.* at 144.

While the court agrees that this is a close case, the court cannot say that it committed a "clear error" in finding that the exclusionary rule should apply. The officer failed to record any facts in his affidavit indicating when the informants actually observed the criminal activity. As the Fourth Circuit has held, "there is no question that time is a crucial element of probable

10

Case 7:12-cr-00057-F   Document 45   Filed 10/29/12   Page 10 of 13

cause . . . [a] valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.' " *United States v. McCall*, 740 F.3d 1331, 1336 (4th Cir. 1984) (quoting *Sgro v. United States*, 287 U.S. 206, 210-11 (1932)). Pursuant to this Fourth Circuit precedent, the officer may "properly be charged with knowledge" that a search warrant includes an essential temporal component. *See Herring*, 555 U.S. at 142 (" 'evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment' " (quoting *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987))). Thus, if the officer may properly be charged with the knowledge that a valid search warrant contains an essential temporal component, an officer who fails to record the relevant time frame has committed a "deliberate, reckless, or grossly negligent" act. *See Herring*, 555 U.S. at 142; *cf. United States v. Song Ja Cha*, 597 F.3d 995, 1004-05 (9th Cir. 2010) (explaining that "deliberate" in the context of the *Herring* decision means "sufficiently deliberate that it can be deterred," and not "intentional misconduct"). At the very least, the government has not shown that the court committed a "clear error of law" such that its failure to consider *Herring* would have definitively changed the outcome in the Original Order.

Furthermore, the court finds that suppression in this case will produce important deterrent effects. Because the conduct at issue here was committed by the chief investigating officer, who also wrote the affidavit submitted to the reviewing judicial officer, that officer and presumably the entire city police department will know, from this point forward, that search warrants and accompanying affidavits must include the dates informants actually observed the criminal activity. The deterrent effect produced in this case obviously surpasses any deterrent effect that

11

suppression in *Herring* would have produced, as that case involved a data entry error within the police department's computer system, committed by an employee far removed from the arrest and investigation. *See Herring*, 555 U.S. at 137 ("Here, the error was the result of isolated negligence attenuated from the arrest."). Here, and in contrast to *Herring*, the chief investigating officer committed the error that caused the Fourth Amendment violation, and suppression here should deter similar police conduct in the future. *See United States v. Lazar*, 604 F.3d 230, 237-38 (6th Cir. 2010), *cert denied*, ___ U.S. ___, 131 S. Ct. 973 (2011) ("This case does not involve the sort of police error or misconduct present in *Herring*. Like *Groh*, it instead deals with particularization of search warrants and whether they are facially deficient. . . . *Herring* does not purport to alter that aspect of the exclusionary rule which applies to warrants that are facially deficient warrants *ab initio*."); *United States v. Martinez*, 686 F. Supp. 2d 1161 (D.N.M. 2009) ("[*Herring*] dealt with negligent bookkeeping, not negligent performance of the police officer's duties. . . . By contrast if [this court] excludes evidence obtained by officers when they fail to make a proper analysis whether exigent circumstances exist, officers might be deterred from making hasty exigent-circumstances assessments and/or apply *ad hoc* rules without performing the necessary analysis); *United States v. Ryan*, No. 2:07-CR-35, 2009 WL 1545794, at *4 (D. Vt. May 26, 2009) ("This is a critical distinction from *Herring*. The law enforcement officers in *Herring* relied upon apparently reliable information that existed. In this case, the agents relied upon a facially invalid warrant that failed to particularly describe the items to be seized.").

In sum, the court finds that the officer's conduct arguably did rise to the level of gross negligence, and that the deterrent effect the court's ruling will have on police misconduct weighs in favor of exclusion in this case. Thus, the court is not convinced that a "clear error of law"

occurred in finding that the exclusionary rule should apply under the particular facts of Carroll's case.

## Conclusion

In summary, and for the foregoing reasons, the Government's motion for reconsideration [DE-39] is DENIED. As the court was completing this Order, the Government made a motion to continue arraignment and trial in this case [DE-44]. The Government is DIRECTED to inform the court **by Thursday, November 1, 2012**, if it still wishes the court to consider that motion in light of the court's ruling denying the motion to reconsider.

SO ORDERED.

This the 29 day of October, 2012.

JAMES C. FOX
Senior United States District Judge